D. J. GUTHRIE *v.* LOUISVILLE & NASHVILLE RAIL-ROAD COMPANY.

1. MASTER AND SERVANT. *Defective tools. Relative duties.* The duty of the master is absolute to use active diligence to ·prevent improper or unsafe tools or implements being furnished an employee by which he may be injured. The servant must use reasonable diligence in guarding against such injuries, but he may well rely, to some extent at least, on the faithful performance of duty on the part of his employer, and what might be ordinary care in avoiding an independent danger, might well not be required to guard against a breach of duty on the part of the master which the servant had no reason to anticipate.

2. SAME. *Same. Case stated.* Where·a laborer upon a railroad, engaged in driving spikes, is furnished by the section-boss with an iron maul known by the section-boss to be defective, and is injured in consequence of such defect, the company is liable, although the defect was patent and would have been known to the servant had he inspected the maul.

FROM GIBSON.

Appeal in error from the Law Court at Humboldt. J. T. CARTHEL, J.

McFARLAND & BOBBITT for Railroad Company.

COOPER, BUCHANAN & SPENCE for Guthrie.

FREEMAN, J., delivered the opinion of the court.

This action is brought to recover for the loss of an eye, by the use of a metal maul, by the plaintiff, while working as an employee of the company in driving spikes fastening down the rails on the track of the road.

It is substantially averred in the declaration that the maul furnished plaintiff by the defendant was defective, and this defect known to the defendant, and that in the proper use of it, while engaged in his employment, under the direction of one Stewart, who was the agent of defendant, the plaintiff's eye was put out by the flying off of part of the head of the maul, and this occurred without the fault of the plaintiff, and by the fault of the defendant in requiring him to work with an insufficient tool.

This is a substantial statement of the case as made by the declaration, and which plaintiff was required to prove to the satisfaction of the jury in order to a recovery, the plea of the defendant being simply "not guilty." Under the instructions of the court, the jury found for plaintiff, and assessed his damages at $2,500, from the judgment on which an appeal in error is prosecuted to this court.

The proof tends to show, and does show, that plaintiff was in the employ of defendant as a bridge carpenter, under the direction of one Stewart as section foreman controlling the work; that on the morning of the injury plaintiff had been engaged in sawing, and one Dual and Wilcox were engaged in spiking down the rails. The mode of doing this seems to have been, that the two worked together, the one driving the spikes on one side, his companion on the other, and they habitually rendered mutual assistance, the one to the other, in doing the work. A short time before the accident, the foreman (Stewart) ordered plaintiff to leave his sawing

and take the place of Dual, and his maul to drive
spikes, on the ground that plaintiff was a better
hand at this kind of work than Dual, and he was
in haste to have the work completed before a train
should arrive, which was due in some two hours
perhaps.    In obedience to this order plaintiff took
the maul of Dual, and proceeded to do the work he
was doing, taking the maul without special inspec-
tion, and with no knowledge of any defect in it.
After working half an hour or more, in driving a
spike it was bent under a "T" of the rail, as the
witnesses express it.    When this was seen, plaintiff
requested Wilcox, his fellow-workman, to aid him in
straightening it, which was done by placing the
small end of the maul between the spike and the
rail, with the larger or face end turned out so as
to be struck by the maul of his companion, the
other holding his own maul by the handle, and the
force of the blow would thus press the maul be-
tween the rail and the bent spike, so as to straighten
it and enable it to be driven to its place.    When
the blow was given by Wilcox for this purpose, a
"shiver," as the witness calls it, flew off from the
face of the maul, striking plaintiff in the left eye,
giving a very painful wound, from which it went
out, and so is lost to the plaintiff entirely.    It is
said also by him that the other eye is weakened and
injured, and that this is and would be the case is
corroborated by the testimony of his attending physi-
cian, who testifies this would be the result of sym-
pathetic action in such a case.

The proof shows very clearly that the use of the maul spoken of was the most usual mode of straightening a spike in such cases, and was altogether proper in itself, and a safe way of doing it, and this was used properly, though a "claw bar" was also furnished by the company to be so used. But it is evident this was optional with the employees. In fact, the proof tends to show that the "claw-bar" was tried first in this case, but they were unable to straighten the spike with it, and therefore resorted to the mode stated, it being thus shown more effective for the purpose.

In addition, it is shown that knowledge of the fact that this maul had become impaired and needed repair had been communicated to the section foreman, whose duty it was to look after and direct the use of the tools, and who, in fact, had specific charge of the work as the agent of the railroad company.

It is evident on this statement of the facts, that if his Honor, the circuit judge, has correctly instructed the jury, the verdict is one that may well stand, and is abundantly supported by the evidence. Indeed, on the substantial facts stated above, there is no countervailing testimony, no witness being introduced by defendant to the contrary.

The only effort to break the force of plaintiff's testimony was by introducing two written statements, signed by witness Wilcox, one given to Stewart, the foreman, some days after the accident, and another in the form of a series of questions put by Mr.

Buquo, an attorney of the road, in August after. These are supposed to weaken, if not contradict, the testimony of this witness. The first, we may say, presents nothing affecting the testimony. It is argued that in this statement the witness is made to say that while they were spiking down the rails together, the spike was "awkwardly" gotten bent under the rail, from which the argument is, that it was the awkwardness or misdirected act of the plaintiff alone which caused the injury. In this, however, the point at issue is mistaken. It is not whether the spike had gotten bent rightfully or wrongly, for their so getting bent seems to have been an usual incident to such work, but whether the use of the maul in its impaired condition was an act of carelessness on the part of the plaintiff, and so the company not responsible. The witness, however, swears that this word "awkwardly" was inserted without his knowledge, and not read to him. There was the clear, uncontradicted testimony of the plaintiff himself in addition, on which the verdict may well rest.

The other statement is unimportant, as far as we· can see. Its main point is to show that a claw-bar would have been perfectly safe; that one was provided, and that it would suffice to draw any spike. But there can be nothing in this, as the whole proof shows that the maul was more convenient and more generally used for this purpose; and this is even corroborated by the statement itself. No order forbidding the use of the maul, or directing the use of

Guthrie *v.* Railroad.

the claw-bar in preference, is shown. We need not further notice these matters.

We have carefully examined the charge of his Honor, the circuit judge, in this case, and certainly find nothing in it of which defendant can complain. In fact, it is evident the learned counsel was well satisfied with it when put to the jury, as nothing more was asked, nor any modification of what had been said. Its propositions are, that it was the duty of the master, in a case like this, through its agents, to be careful, diligent and skillful in the selection of the tools that it furnished its servants to work with, and also in keeping them in repair after they are furnished, and the employee is responsible for any injury that results to the same, on account of the agents of the master in failing to comply with and discharge this duty, and failing to furnish servants with reasonably safe and suitable tools to work with. This general proposition, with the qualifications after given, is undoubted law, as applicable to this relation.

His second proposition was substantially that the employee undertakes to run all the ordinary risks of the service in which he voluntarily engages. After stating that these were the general rules, he then proceeds to specifically point out their application to the facts of the case in hand. He tells them, if the plaintiff was furnished this maul for work by the foreman, and that the maul was worn and defective, and the plaintiff's eye was put out by reason of this defective condition, in such employment, and

the defects known by defendant or its employees, whose duty it was to look after the condition of the maul, or if said employees having such duty might have known of the defects and need of repair, by the use of such diligence and skill as a prudent and careful man would have used in attending to such a matter, the defendant would be liable.

He then defines the measure of care on the part of plaintiff by qualifying the above right of recovery, as follows: "Unless you find that the plaintiff also knew of the defect in the maul himself, or might have known it by the use of ordinary care and at tention to it; or unless the injury was the result of the carelessness of the plaintiff as its proximate and efficient cause." But, he adds, "if you find the plaintiff knew of the defect in the maul, and that it was dangerous to use it, or that he might have known it or discovered it by the use of ordinary care and attention, and thereby have avoided its use, it was his duty to do so, and if he disregarded this duty, he could not recover, although in fact he did not know of the defect; or if the careless manner of the use of the maul by plaintiff was the proximate and efficient cause of the injury, then he could not recover."

These are the points of law on which his Honor submitted the case to the jury. We have given them mainly in his own language.

The first proposition, that it is the duty of a railroad company to furnish, in a case like this, safe and suitable tools, is sustained in principle by a

number of our own cases. The rule has been laid down in reference to machinery, but the principle is precisely the same where the employee is employed in a service where the tools furnished by his employer are, by custom or usage, or by the actual practice of the employer, to be used by the employee. As to the duty so far as machinery is concerned, see case of *Nashville & Chattanooga Railroad Company* v. *Elliott,* 1 Cold., 613; *Railroad* v. *Carroll,* 6 Heis., 358; *Railroad* v. *Jones,* 9 Heis., ∴9; 3 Baxt., 427.

In the case of Elliott, 1 Cold., 617, after laying down the rule, that the servant takes the risks inseparable from his employment, broadly, the qualification is given from Redfield on R., as follows: "This doctrine, however, must be taken with the qualification that the employer must take care not to expose the servant to any risk by associating him with other servants wanting ordinary skill, or by the use of unsafe or unsuitable machinery, or other culpable negligence."

It is seen that this principle thus stated is more affirmative than the statement of his Honor, in that it is said the employer *must take care* that the machinery "is safe and suitable," and that the employee be not exposed to risks in this direction, or from other culpable negligence. Taking care involves the idea of an active duty imposed, the failure to perform which, when injury occurs, is such negligence as raises a liability for the damages resulting. This is the sound rule, and has been uniformly followed in

principle, though not in the precise language quoted by this court.

On the second proposition, as to the duty of the employee, his Honor's charge was favorable to the defendant, for he excuses from liability if the defect was known, " or might have been known by the use of ordinary care and attention," or the *carelessness* of the plaintiff was the proximate cause of the accident. Now, in reference to a case like this, the true rule is, that the duty of the master is absolute to use active diligence to prevent improper or unsafe tools or implements being furnished an employee, by which he may be injured: J Cold., 613.

In reference to this matter the employee may well rely, to some extent at least, on the faithful performance of duty on the part of his employer, and therefore what might be ordinary care in avoiding an independent danger, might well not be required to the same extent to guard against a breach of duty on the part of another, which the party could have no reason to anticipate. The employee had no duty to perform, under the facts in this case, as to the repair of the tools; nor was he called on to inspect them to see whether the master might not have neglected his duties in this reference. There being no special care imposed by the nature of his position, nor obligation to inspect the tools, there could be no want of it, or negligence, or carelessness, in not doing what he was not bound to do by the nature of his employment and the legal obligations arising out of the relations existing between the

parties.  We do not intend by this, however, to say that the employee is not bound to proper attention, and bound to freedom from actual negligence in avoiding risks incident to his employment.

The defendant cannot complain that the employee did not suspect or anticipate a breach of legal duty on his part, nor watchfully guard against danger from such breach.  It is not for him to object that the plaintiff has relied on his faithful discharge of his duty, nor to insist that he should have inspected the tools he was ordered to use for the purpose of seeing whether the master had not violated his duty. The proof shows he was ordered to take the place of Dual in this case, who was using this maul, and it was but natural that he should have done so without suspicion; and the failure to examine before using was not carelessness on his part.

The law applicable to this case might well have been qualified by his Honor in the way indicated. As charged by him the defendant certainly cannot complain.

We see nothing in the grounds furnished by the affidavit of surprise on which the case can be reversed.  The fact of being able to draw the spike with the "claw-bar," or whether it was used before the maul, is unimportant, as the use of the maul is clearly shown not only to have been usual, but a legitimate mode of doing this work.  We need not say more than we have said on this aspect of the case.

The jury, under the instructions of his Honor,

have found the employer guilty of neglect of duty, and that the plaintiff had used ordinary care and diligence to prevent injury, and was guilty of no negligence on his part. These findings being sustained by the proof, the case must necessarily be affirmed.